**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RANDALL CASTRO, Individually and On Behalf of All Others Similarly Situated,**<br><br>          **Plaintiff,**<br><br>-against-<br><br>**MECC CONTRACTING INC., JOSEPH MECCARIELLO and LUIGI MOCCIA, Jointly and Severally,**<br><br>          **Defendants.** | <u>**CLASS & COLLECTIVE**</u><br><u>**ACTION COMPLAINT**</u><br><br>**Jury Trial Demanded** |

Plaintiff Randall Castro ("Castro"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

1

## NATURE OF THE ACTION

1.      Plaintiff is a former laborer and saw cutter who worked for Defendants on New York City roadways, pursuant to contracts with Consolidated Edison Company of New York, Inc. ("Con Edison"). Throughout the relevant time period, Plaintiff either received straight-time rates for all hours for which he received compensation or received overtime premiums only for certain hours that he worked in excess of forty (40) in a week, and was not paid wages of any kind for time spent traveling from the job sites to the Defendants' yard at the end of each workday, resulting in significant unpaid overtime wages each week. Plaintiff was also not paid the applicable prevailing rate of wages or supplemental benefits for all hours that he worked on excavation projects for Con Edison on New York City roadways and sidewalks.

2.      Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also seeks to recover unpaid prevailing wages, daily overtime and supplemental benefits which he and the members of the putative Class were entitled to receive for work, including weekend, evening and holiday work, they performed pursuant to contracts entered into between Defendants and Con Edison, which required payment of prevailing wages.

3.      Plaintiff also brings claims for Defendants' failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.*

4.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of herself and a Federal Rule of Civil Procedure 23 class of all laborers, saw cutters and other construction employees working for Defendants in New York.

2

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff**:

9.      Plaintiff Castro was, at all relevant times, an adult individual residing in Richmond County, New York.

10.     Throughout the relevant time period, Plaintiff performed work for Defendants and on roadways and sidewalks throughout the New York City area and in Defendants' yard, located at 21 Autumn Avenue, Brooklyn, New York 11208.

11.     Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants**:

12.     Defendant MECC Contracting Inc. ("MECC" or the "Corporate Defendant") is an active New York corporation with its principal place of business located at 21 Autumn Avenue,

Brooklyn, NY 11208.

13.    At all relevant times, the Corporate Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

14.    Upon information and belief, at all relevant times, the Corporate Defendant had gross revenues in excess of $500,000.00.

18.    Upon information and belief, Defendants Joseph Meccariello ("Meccariello") and Luigi Moccia ("Moccia" and, together with Meccariello, the "Individual Defendants") are owners and operators of MECC who set the company's payroll policies, including the unlawful practices complained of herein.

19.    Throughout the relevant time period, upon information and belief, the Individual Defendants were in charge of determining the company's policies with respect to payroll and otherwise running the business of MECC.

15.    In corporate filings with the New York State Department of State, Division of Corporations, Meccariello is listed as the Chief Executive Officer of the Corporate Defendant.

16.    Upon information and belief, Defendant Moccia is the President of the Corporate Defendant.

17.    The Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiff and the Corporate Defendant's other similarly situated employees and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

18.    Upon information and belief, the Individual Defendants maintain offices at 21

Autumn Avenue, Brooklyn, NY 11208, wherein they oversaw the operations of the Corporate Defendant.

19.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

20.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since September 19, 2014 and through the entry of judgment in this case (the "Collective Action Period") who worked as saw cutters, laborers and other construction workers (the "Collective Action Members").

22.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay overtime premiums for all work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

23.     Plaintiff and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

## <u>NEW YORK RULE 23 CLASS ALLEGATIONS</u>

24.     Pursuant to the NYLL and the New York common law, Plaintiff brings his Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in New York at any time since September 19, 2011 and through the entry of judgment in this case (the "Class Period") who worked as saw cutters, laborers and other construction workers (the "Class Members").

25.     <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

26.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

27.     Upon information and belief, there are in excess of forty (40) Class Members.

28.     <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

>   a.   whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;
>
>   b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;
>
>   c.   whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for all hours worked in excess of forty (40) hours per workweek;

    d.   whether Defendants breached contracts with Con Edison by failing to pay Plaintiff and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

    e.   whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;

    f.   whether Defendants failed and/or refused to pay Plaintiff and the Class Members supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules;

    g.   whether Defendants were unjustly enriched by failing to pay Plaintiff and the Class Members at prevailing wage rates on prevailing wage jobs;

    h.   whether Defendants failed to provide accurate wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

    i.   whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

    j.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

29.    <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, was a construction employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid overtime

premium pay for all hours worked over forty (40) hours in a given workweek; not paid prevailing wages, supplemental benefits or daily/weekly overtime prevailing wages for work performed on New York City sidewalks and roadways; not provided proper wage statements with each of his wage payments; and not provided proper wage notice when hired or before February 1 of each year. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

30.    Plaintiff and his Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

31.    Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

32.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

33.    Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

34.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## **STATEMENT OF FACTS**

**Defendants' Company**

35.    At all relevant times, Defendant MECC has been in the construction contracting business.

36.    At all relevant times, Defendants Meccariello and Moccia have been in charge of the day-to-day operations of MECC including, among other things, hiring and firing employees and setting the schedules and wage rates of employees.

37.    Upon information and belief, the Individual Defendants handled the operations of MECC's business from MECC's central office and gave direction to their foreman to ensure that the work in the field was being conducted in accordance with their policies and procedures, including the policies complained of herein.

38.    Upon information and belief, MECC entered into contracts as prime and/or sub-contractors with Con Edison and other entities that required all employees working on the projects, including Plaintiff and the Class Members, to be paid prevailing wages for work performed on New York City roadways and sidewalks.

**The Con Edison Contracts**

39.    Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with Con Edison and/or other public utility agencies to provide certain construction work on New York City roadways and sidewalks, or with prime contractors not currently known, to furnish labor, material and equipment to perform work on New York City roadways and sidewalks (the "Con Edison Contracts").

40.    Upon information and belief, the Con Edison Contracts obligated Defendants to pay Plaintiff and the Class Members at or above the local prevailing wage rates, including any

required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Specifically, the "labor" provision of Con Edison Standard Terms and Conditions for Construction Contracts ("Contract Terms") provides in pertinent part:

> Where Contractor employs workers on sites where a permit to use or open a street (including excavating the street) is required and New York City Administrative Code Section 19-142, or its successor . . . is applicable, Contractor agrees that . . . the prevailing scale of union wages shall be the prevailing wage for similar titles as established by the Comptroller of the City of New York pursuant to Section 220 of the New York State Labor Law . . . paid to those so employed, and Contractor shall pay that prevailing wage to workers so employed.

41.     Upon information and belief, the Contract Terms, including the labor provision requiring payment of prevailing wages, were incorporated into all of the Con Edison Contracts.

42.     Defendants' failure to pay Plaintiff proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

43.     As employees of Defendants who were assigned to work on Defendants' excavation projects, Plaintiff and the Class Members were intended third-party beneficiaries of Defendants' Prevailing Wage Contracts.

44.     Upon information and belief, each project which involved street opening upon which MECC performed work pursuant to the Con Edison Contracts, required a Street Opening Permit issued by the NYC Department of Transportation (DOT). The Street Opening Permit included various stipulations for the work that was being performed, including, but not limited to, stipulations regarding the wages that were to be paid to all workers on the excavations. Specifically, the permits provided:

WAGE01        NYC ADMINISTRATIVE CODE, 19-142, WORKERS ON

EXCAVATIONS: A PERSON TO WHOM A PERMIT MAY BE ISSUED, TO USE OR OPEN A STREET, SHALL BE REQUIRED, BEFORE SUCH PERMIT MAY BE ISSUED, TO AGREE THAT NONE BUT COMPETENT WORKERS, SKILLED IN THE WORK REQUIRED OF THEM, SHALL BE EMPLOYED THEREON, (CONT. ON STIP WAGE02)

WAGE02    ...AND THAT THE PREVAILING SCALE OF UNION WAGES SHALL BE THE PREVAILING WAGE FOR SIMILAR TITLES AS ESTABLISHED BY THE FISCAL OFFICER PURSUANT TO SEC. TWO HUNDRED TWENTY OF THE LABOR LAW, PAID TO THOSE SO EMPLOYED.

45.    The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Con Edison Contracts was made for the benefit of all workers furnishing labor on New York City roadways and sidewalks, and, as such, the workers furnishing labor on New York City roadways and sidewalks are the beneficiaries of that promise and the contracts entered into between Defendants and the public utility or other public agencies.

46.    Upon information and belief, in furtherance of the Con Edison Contracts entered into by Defendants, Plaintiffs and other members of the putative Class performed various saw cutting and construction labor tasks including, but not limited to cutting the street with a core cutting machine, hooking up hoses to hydrants, marking out the job, cleaning debris from the street, mixing cement, carrying pipes, bags of cement and other materials, digging up any part of the street that the backhoe was not able to excavate, and jackhammering concrete.

47.    Upon information and belief, Defendant MECC is compensated by Con Edison, or the other entities with whom MECC contracts to provide construction services, at the prevailing union wage rates for all of the workers on the projects, including Plaintiff and Defendants' union employees.

**Plaintiff's Work for Defendants**

48.    Plaintiff Castro worked for Defendants as a laborer from in or around July 2005 through in or around late January 2009 and a saw cutter from in or around January 2009 through the end of 2015 (the "Castro Employment Period").

49.    Plaintiff Castro became a member of the Local 731 Laborers' Union in approximately late January 2009. Plaintiff was out of work for approximately five to seven (5-7) months due to surgery resulting from a workplace injury, and another five to six (5-6) weeks, due to a second surgery, between approximately 2013 and 2015.

50.    In addition to his saw cutter duties, Plaintiff Castro was responsible for driving a box truck to and from the job site each day. Although he was required to drive the truck back to the MECC yard at the end of each workday, he was not paid wages of any kind for this time. Castro also occasionally worked on the cable pulling crew, helped the laborers to shovel and carry pipe if he finished his saw cutting work for the day, and worked as a manhole inspector during his employment with Defendants.

51.    Throughout the Castro Employment Period, Plaintiff Castro typically worked six (6), and sometimes seven (7) days per week, for a total of approximately forty to fifty (40-50) hours per week, and sometimes more, from approximately January through the start of the summer and approximately sixty to seventy (60-70) hours per week, and sometimes more, during the summer months. Plaintiff alleges that he typically worked approximately thirty to forty (30-40) hours per week during the company's "slow" period, which typically lasted for a period of approximately one (1) month sometime between October and December of each year.

52.    Plaintiff alleges that he typically arrived at the MECC yard at approximately 7:00 am to fill the truck with diesel and gather supplies, barricades and layouts of the job site before

heading to the job. While he was typically scheduled to work from 7:00 am to 4:00 pm, and ten (10) hours on Saturdays, after he became a saw cutter in or around early 2009, he was typically required to perform work on emergency jobs (e.g., cutting open the street if the underground wires beneath a manhole melted or burned out so that Con Edison could run new cable) one to two (1-2) times per week, and sometimes more. Additionally, Plaintiff would occasionally be required to remain in his truck overnight and block a particular street on which the MECC crew was scheduled to work until the crew arrived for work at 7:00 am. Plaintiff alleges that while he typically worked on emergency jobs between approximately 4:00 pm through 12:00 am, and sometimes as late as 3:00 am or 4:00 am, on at least one occasion, he worked thirty (30) hours straight without relief. Plaintiff alleges that throughout the relevant time period, he occasionally worked as many as eighty to one hundred (80-100) hours in a week.

53.    Plaintiff alleges that he was paid approximately eleven to twelve dollars ($11.00 - $12.00) per hour, with no benefits of any kind, at the start of the Castro Employment Period, and that he received a raise of approximately two dollars ($2.00) per hour approximately every six (6) months. In early 2009, when he became a member of the Local 731 Union, Castro began receiving a base rate of approximately twenty-nine dollars ($29.00) per hour, plus certain benefits that were part of his Local 731 union package. Plaintiff Castro further alleges that he received periodic raises until the end his employment with Defendants, such that he was receiving a base rate of approximately forty-five dollars to forty-six dollars ($45.00 - $46.00) per hour by the end of the Castro Employment Period, and that the total union package, which included certain benefits, totaled approximately seventy-four dollars and ninety cents ($74.90) per hour.

54.    Plaintiff further alleges that he received a different hourly rate for portions of his payment that he received in cash or on a business check. Plaintiff alleges that he typically received

approximately twenty-five dollars ($25.00) per hour for all hours for which he was paid cash or via a company check when he first became a member of the union in early 2009 and that he received approximately forty dollars ($40.00) per hour for all hours for which he received cash or a business check by the time that left the company in or around the end of 2015.

55.    Plaintiff alleges that after he became a member of the union in or around early 2009, he typically received a payroll check for all regular hours that he worked and either cash or a business check for all overtime hours at a rate that was slightly lower than his regular hourly rate.

56.    Plaintiff alleges that he primarily received cash for overtime payments between 2009 and 2011 and that he did not receive supplemental benefits of any kind for hours for which he was paid in cash or through a business check.

57.    Plaintiff alleges that while Defendants occasionally paid him for certain hours worked in excess of forty (40) in a week at one and one-half (1.5) times his regular hourly rate on his paycheck, he received payment for the rest of the overtime hours that he worked via cash or business check at straight time rates.

58.    Plaintiff alleges that he was occasionally paid for three (3) days of work at his "union" rate, including supplemental benefits, and for the remaining three (3) days of his workweek in cash or on a business check, at straight time and without supplemental benefits.

59.    Plaintiff alleges that if he worked two (2) or three (3) days in a week, during slower times, or during periods of heavy snowfall, Defendants would typically pay him entirely in cash or business check at his regular "cash" hourly rate, without supplemental benefits of any kind. Defendant Moccia informed Castro on at least one (1) occasion that paying him in this manner benefitted Castro, as he would take home more money if union dues and payroll taxes were not deducted from his payment.

60.     Throughout the Castro Employment Period, Plaintiff Castro typically received his payment from various supervisors in the MECC yard each week, which they retrieved from the MECC office.

61.     Throughout the Castro Employment Period, Defendants kept track of the hours that Castro worked by requiring him to fill out a sheet indicating the date, location(s) of job site(s) on which he worked, his time in and out on each job, and how many feet he cut during the day, which he dropped off at the MECC office at the end of his workday. Defendant Moccia informed Plaintiff Castro that MECC turned over the sheets to Con Edison in order to get paid for the work that MECC employees performed. It is Plaintiff's belief that Defendant Moccia ultimately reviewed the time sheets, as Moccia would occasionally question him and other employees about the hours that they submitted. Plaintiff further alleges that he was instructed by Defendant Moccia to identify himself as a "foreman" on the sheets, despite the fact that he did not receive the Local 731 foreman rate, which was approximately four dollars ($4.00) per hour higher than his regular hourly rate, at any point during his employment with Defendants.

62.     Upon information and belief, Defendant Moccia was responsible for MECC's payroll and did taxes for MECC.

63.     Plaintiff alleges that he complained to Defendant Moccia on several occasions when he first started receiving cash payments that he was not receiving one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) or supplemental benefits of any kind for certain hours that he worked. Defendant Moccia would typically respond by informing Plaintiff Castro that "that's how it is now."

64.     Plaintiff alleges that he began receiving certain yellow cards from Local 731 on which he was supposed to list the dates, locations of the projects and the hours that he worked, and

mail them back to the union, when he first became a member. Plaintiff alleges that a MECC shop steward instructed him to throw out the cards in or around 2009.

65.    Plaintiff Castro alleges that while he received certain paperwork from his union showing his hourly rate, he did not receive a proper wage notice annually on February 1 of each year from Defendants at any point during the Relevant Time Period.

66.    Plaintiff further alleges that his paystubs did not show an accurate accounting of all hours that he had worked during the workweek and that he often received payment for overtime hours worked in cash or on a business check.

67.    Based on Castro's observations of the MECC yard and conversations with other employees of Defendants, it is Castro's belief that the majority of Defendants' employees received some portion of their payment in cash and did not receive overtime premiums of one and one-half (1.5) times their regular hourly rate for all overtime hours worked or supplemental benefits of any kind for hours for which they received cash. It is Castro's belief that certain laborers were paid for three (3) days at their "union" rate, including certain benefits, and for the remaining three (3) days of their workweek in cash at straight-time rates, with no benefits of any kind.

68.    On at least one (1) occasion, after Plaintiff Castro complained to Defendant Moccia that he appeared to have been paid at the incorrect rate for certain hours for which he was paid cash, Defendant Moccia pulled out an extensive list of names of all MECC employees who were receiving cash payments to confirm the rate at which Castro should have been paid.

69.    Defendants' failure to pay overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week was a corporate policy that applied to all laborers, saw cutters and other construction workers employed by Defendants.

70.    Upon information and belief, during the period of time for which Plaintiff and the

members of the putative Class performed work on New York City roadways, Defendants failed to ensure payment of the correct prevailing rate of wages and supplemental benefits, including overtime pay, to which Plaintiff and other members of the putative Class were entitled.

71.    Defendants failed to provide Plaintiff and their other similarly situated employees with proper wage notices at the time of hire or on February 1 of each year or proper wage statement(s) with every payment of wages or accurate wage statements pursuant to the NYLL.

**FIRST CAUSE OF ACTION**
**<u>FAIR LABOR STANDARDS ACT – UNPAID OVERTIME</u>**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

72.    Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73.    Defendants violated the FLSA overtime rights of Plaintiff and the Collective Action Members by improperly treating them as exempt from the FLSA when they performed non-exempt duties and failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

74.    By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

75.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

76.    Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members

are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
#### (Brought on Behalf of Plaintiff and the Class Members)

77.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

78.    Defendants violated the NYLL overtime rights of the Plaintiff and the Class Members by improperly treating them as exempt from the NYLL when they performed non-exempt duties and failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

79.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

80.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT
### (Brought on Behalf of Plaintiff and the Class Members)

81.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.    Upon information and belief, the Con Edison Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits or reference to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiff and the employees performing work pursuant to such contracts.

83.    Those prevailing rates of wages and supplemental benefits were made part of the Con Edison Contracts for the benefit of the Plaintiff and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiff and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

84.    Defendants' failure to pay Plaintiff at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

85.    As a result of Defendants' failure to pay Plaintiff at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

## FOURTH CAUSE OF ACTION
## <u>UNJUST ENRICHMENT & QUANTUM MERUIT</u>
### (Pled In The Alternative)
### (Brought on Behalf of Plaintiff and the Class Members)

86.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.     Based on Defendants' failure to pay Plaintiff the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff.

88.     Equity and good conscience require that Defendants pay restitution to Plaintiff.

89.     Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the contracts.

90.     Plaintiff provided valuable services to Defendants performing prevailing wage jobs for which Plaintiffs expected compensation. Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

91.     As a result of Defendants' failure to pay Plaintiff at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff are entitled to relief from Defendants under New York's common law of unjust enrichment.

92.     As a result of Defendants' failure to pay Plaintiff the reasonable value of the valuable services they rendered, Plaintiff is entitled to relief from Defendants under New York's common law of quantum meruit.

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS
### (Brought on Behalf of Plaintiff and the Class Members)

93.     Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.     Defendants have willfully failed to supply Plaintiff and the Class Members a proper wage statement as required by Article 6, § 195(3).

95.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250) per employee for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS
### (Brought on Behalf of Plaintiff and the Class Members)

96.     Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.     Defendant has willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate

or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

98.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, § 198(1-b)., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and her counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiff and his counsel to represent the

        Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

e.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

i.      An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand

dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1-b);

j.        An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class;

k.       An award of prejudgment and post-judgment interest;

l.        An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.     Such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       September 19, 2017

                       Respectfully submitted,

                       **PELTON GRAHAM LLC**

                       By: _____
                       Brent E. Pelton (BP 1055)
                       Taylor B. Graham (TG 9607)
                       111 Broadway, Suite 1503
                       New York, New York 10006
                       Telephone: (212) 385-9700
                       Facsimile: (212) 385-0800

                       *Attorneys for Plaintiff, the putative collective and class*

24

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of MECC Contracting Inc., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          _____
            Signature                            Printed Name
                                                 Randall Castro